PEOPLE v GRANDERSON

Docket No. 154578. Submitted June 8, 1995, at Lansing. Decided
   August 18, 1995, at 9:00 A.M.

   Timothy Granderson was convicted in the Saginaw Circuit Court,
   Leopold P. Borrello, J., of armed robbery, involuntary man-
   slaughter, and possession of a firearm during the commission of
   a felony. The convictions arose out of the robbery and brutal
   killing of a sixty-nine-year-old woman afflicted with various
   debilitating medical problems. The convictions rested in part on
   the inculpatory statement given by the defendant to the police.
   At the sentencing hearing, the prosecution argued that, al-
   though the proofs tended to show that the defendant was guilty
   of the charged offense of first-degree murder, the evidence
   inarguably established that the defendant had committed at
   least second-degree murder and that the defendant should be
   sentenced accordingly. The trial court thereafter departed from
   the sentencing guidelines and sentenced the defendant to a
   term of life imprisonment for the armed robbery conviction and
   to ten to fifteen years for the manslaughter conviction. The
   defendant appealed.

   The Court of Appeals *held:*

   1. Before the questioning by the police that resulted in the
   inculpatory statement that was admitted at trial, the defen-
   dant, in response to being informed of his right to an attorney
   and the fact that one would be provided if he could not afford
   one, said, "Yeah, I'm — I'm ah need that 'cause I can't afford
   none." That statement did not require the police to cease
   questioning immediately, because the statement properly could
   be considered to be in the future tense rather than the present
   tense and, thus, did not reflect a present desire for counsel.
   Even if the statement were considered to be an ambiguous
   request for counsel, suppression of the inculpatory statement
   would not be required, because an ambiguous request for

REFERENCES
Am Jur 2d, Criminal Law §§ 595, 599, 988-990.
See ALR Index under Attorney or Assistance of Attorney; Sentence
   and Punishment.

counsel does not require law enforcement officers to cease questioning.

2. Because a court properly may consider for sentencing purposes the facts underlying an acquittal, it was not improper for the prosecution to argue at sentencing that, despite the fact that the jury returned a verdict of manslaughter, the facts supported a conviction of murder and that the defendant should be sentenced accordingly.

3. The trial court did not abuse its discretion in departing from the sentencing guidelines in sentencing the defendant with respect to the armed robbery conviction. Because the guidelines did not take into account the brutal nature of the manner in which the defendant inflicted the injuries on the victim, an elderly woman who was a near invalid, the trial court properly held that the circumstances of the crime were not reflected adequately in the offense variables. The fact that the defendant had no prior criminal record did not render the imposition of the maximum possible sentence disproportionate.

Affirmed.

1. CRIMINAL LAW — POLICE INTERROGATION — REQUEST FOR COUNSEL.

The police are not obligated to terminate questioning of a suspect upon the suspect making an ambiguous or equivocal request for an attorney; unless a suspect actually requests an attorney, questioning may continue.

2. CRIMINAL LAW — SENTENCING — PRIOR ACQUITTALS.

A prior acquittal, without more, is not sufficient reason to preclude a court from taking into account for the purpose of sentencing the facts underlying the acquittal.

3. CRIMINAL LAW — SENTENCING — PROPORTIONAL SENTENCES.

The fact that a defendant has no prior criminal record does not preclude the imposition of the maximum possible sentence where the seriousness of the offense is sufficient to render such a sentence proportional even when considered in conjunction with the defendant.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Michael D. Thomas,* Prosecuting Attorney, and *J. Thomas Horiszny,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*), for the defendant on appeal.

Before: MARILYN KELLY, P.J., and O'CONNELL and D. A. TEEPLE,* JJ.

O'CONNELL, J. Defendant appeals as of right his convictions by jury of armed robbery, MCL 750.529; MSA 28.797, involuntary manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He also challenges the proportionality of the life sentence imposed. We affirm.

Joyce Crandall was a frail, sixty-nine-year-old woman afflicted with emphysema, arthritis, and hip problems. Because of her physical condition, she spent virtually all of her time in an easy chair, unable even to sleep in a horizontal position on a bed. On January 10, 1990, she was found, by a representative of the Meals on Wheels program, brutally murdered. She had been shot several times (once in the back), stabbed repeatedly in the abdomen, and bore the marks of a severe beating. Her nose and right arm had been broken, and she had bruises and abrasions on her face.

Crandall had, in the past, hired defendant to perform odd jobs for her. Because of this, defendant was aware that Crandall kept cash in the house. Crandall's daughter testified at trial that Crandall had trusted defendant.

Defendant became a suspect in the murder and robbery, and, when interrogated by police officers, inculpated himself. He admitted that he had "tussled" with Crandall, and he proceeded to present a wholly incredible account of the events resulting in her death. He claimed that Crandall had leveled a gun at him for no apparent reason and that she was shot when the gun somehow misfired. He also admitted taking some of the money and items

---

* Circuit judge, sitting on the Court of Appeals by assignment.

missing from Crandall's home after she allegedly fatally shot herself.

On appeal, defendant presents three arguments. He first contends that his inculpatory statements should have been suppressed because he had requested counsel before making those statements. Our independent evaluation of the record, *People v Robinson*, 386 Mich 551, 558; 194 NW2d 709 (1972), reveals no clear error on the part of the trial court, *People v Jobson*, 205 Mich App 708, 710; 518 NW2d 526 (1994), and we agree that defendant's statements were voluntarily made and, thus, properly were admitted.

Before being questioned, defendant was presented with a written waiver form. A police officer also read defendant his rights. After the officer stated, "And if you want an attorney and you can't afford one, the state will pay for an attorney for you," defendant responded, "Yeah, I'm—I'm ah need that 'cause I can't afford none." The bottom of the waiver form read, "I do not want an attorney at this time." The officer asked defendant if he understood what this meant. He replied that he did. The officer then asked defendant if he was "willing to speak [with them] today about the incident of January 10?" Defendant answered in the affirmative, after which he signed the waiver of rights form.

Defendant's words reveal that he would, at some future time, be in need of a court-appointed attorney, because he would be unable financially to retain one. The term "I'ma," transcribed as "I'm ah," has been recognized as a nonstandard reduction of "I'm gonna." Shores, *Contemporary English* (J. B. Lippincott Co, 1972), p 72. "I'm gonna," in turn, is what is termed pronunciation spelling of "I'm going to." See "gonna," *Random House Webster's College Dictionary* (1992), p 574. Thus, by

substituting standard forms, we are left with "I am going to need that because I cannot afford one," a simple future tense. Therefore, we are convinced that defendant's language reflected no present desire for counsel.[1]

However, were we to make the generous assumption that defendant's statement was, in fact, an ambiguous request for counsel, suppression of his subsequent inculpatory statements still would not be required. While defendant relies on *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), to support the contrary position, *Edwards* was recently clarified by the Supreme Court in *Davis v United States,* 512 US —; 114 S Ct 2350; 129 L Ed 2d 362, 372-373 (1994), in which it was stated:

> We decline petitioner's invitation to extend *Edwards* and require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney. . . .
>
>             \*    \*    \*
>
> . . . We held in *Miranda* [v *Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] that a suspect

---

[1] Defendant also attacks the trial court's consideration, during the hearing conducted pursuant to *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), of his subsequent execution of the waiver as supporting that court's conclusion that defendant's words did not evince a present desire for counsel. He argues, relying on *Smith v Illinois,* 469 US 91, 98; 105 S Ct 490; 83 L Ed 2d 488 (1984), that an "accused's post request responses to further interrogation may not be used to cast retrospective doubt upon the clarity of his initial request for counsel." However, the trial court correctly distinguished *Smith* as controlling only where an accused makes an unambiguous request for counsel. Because any clarity one could ascribe to defendant's statement would be to the effect that defendant uttered a clear statement that he would not be able to afford an attorney and would eventually need the court to appoint one, defendant's reliance on *Smith* is misplaced. A proper invocation of the rule of law established in *Smith* would require a demonstration that defendant unambiguously requested counsel, something that defendant is unable to demonstrate.

is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in *Edwards* that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer. Unless the suspect actually requests an attorney, questioning may continue. [Emphasis in original.]

Therefore, even assuming that defendant's words constituted an ambiguous request for counsel, the police were not required to refrain from questioning defendant, and defendant's subsequent inculpatory statements properly were admitted. Had defendant, in fact, been requesting an attorney, he had only to clarify his words, at which time, pursuant to *Edwards, supra,* all police questioning would have ceased.

Defendant next argues that he must be resentenced because the prosecution's statements at the sentencing hearing constituted misconduct. The prosecution explicitly requested that the circuit court sentence defendant as if he had been convicted of second-degree murder, though defendant had been convicted only of involuntary manslaughter. The prosecution argued that, in fact, defendant had committed the charged offense of first-degree murder, but that the evidence inarguably established that defendant had committed at least second-degree murder and should be sentenced accordingly.

The prosecution's arguments were proper. MCR 6.425(D)(2)(c) requires that the sentencing court allow the prosecution "an opportunity to advise the court of *any circumstances* [it] believe[s] the court should consider in imposing sentence" (em-

phasis supplied). A majority of the justices of our Supreme Court, by our tally, subscribe to the view that a prior acquittal, without more, is not sufficient reason to preclude the court from taking into account the facts underlying that acquittal at sentencing. *People v Ewing (After Remand),* 435 Mich 443, 451 (opinion by BRICKLEY, J.), 479 (opinion by BOYLE, J., concurred with by RILEY, C.J., and GRIFFIN, J.); 458 NW2d 880 (1990). Defendant was given ample opportunity at trial and at the sentencing hearing to refute, as well as he was able, the facts tending to support the prosecution's argument, an opportunity that *Ewing* requires be made available. *Id.,* pp 455-479. Therefore, we find the prosecution to have acted well within its rights in advancing the argument that it did.[2]

Defendant's final contention is that the life sentence imposed is disproportionate within the meaning of *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). Note that the sentence in issue was imposed for defendant's conviction of armed robbery, rather than for his conviction of involuntary manslaughter, the maximum sentence for which is fifteen years' imprisonment. MCL 750.321; MSA 28.553. Specifically, defendant contends that, under the sentencing court's reasoning, the aggravating circumstances surrounding the death of the victim were accounted for three times, which, it is alleged, is improper, "first, under the sentencing guidelines; second, as a basis for departing [from] the sentencing guidelines range; and, third, as a basis for an independent conviction [involuntary manslaughter] . . . ."

---

[2] Because the prosecution's statements were not improper, we do not comment concerning whether an allegation of misconduct by a prosecutor, usually defined as occurring when the prosecution's actions deprive the defendant of a fair and impartial *trial,* see, e.g., *People v Legrone,* 205 Mich App 77, 82-83; 517 NW2d 270 (1994), properly may be raised with respect to actions taken at a sentencing hearing.

We hold that the sentencing court considered no improper considerations in determining an appropriate sentence and find that the sentence imposed does not reflect an abuse of discretion. *People v Odendahl,* 200 Mich App 539, 540-541; 505 NW2d 16 (1993). In our discussion of *Ewing, supra,* we have set forth the relevant law justifying consideration during sentencing of crimes for which a defendant was acquitted. Therefore, we are left with defendant's first and second contentions, quoted in the preceding paragraph, and must evaluate whether a sentencing court may base a sentence more lengthy than that suggested by the sentencing guidelines on factors accounted for in the sentencing guidelines. We hold that a sentencing court may.

As recently reiterated in *People v Houston,* 448 Mich 312, 320; 532 NW2d 508 (1995), "[u]nder *Milbourn,* the 'key test' of proportionality is not whether the sentence departs from or adheres to the recommended range, but whether [a sentence] reflects the seriousness of the matter." The *Houston* Court, in affirming a sentencing court's upward departure based on factors otherwise accounted for in the offense variables, explained that "*Milbourn* did not state or establish that any factors accounted for in the guidelines had been adequately considered or appropriately weighed." *Id.* Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted. *Houston, supra, passim.* We agree with the sentencing court that the present case warrants such an upward departure.

Defendant severely beat an elderly woman who was a near invalid, breaking her nose and arm, and then repeatedly stabbed and shot her. His

actions are rendered more appalling by the fact that he committed these acts against a woman who trusted him and who had previously hired him to perform odd jobs around her house. Must a reasonable court conclude that these circumstances are adequately accounted for by the relevant robbery offense variables, such as offense variable (ov) 1, "A firearm is discharged by offender during commission of the offense," or ov 2, "Victim killed"? The answer is obvious. We wholeheartedly agree with the sentencing court in finding that the circumstances of the present crime were not adequately reflected in the offense variables.

Defendant also argues, although somewhat obliquely, that where a defendant's prior record variables are scored at zero, a sentencing court abuses its discretion by imposing the maximum sentence. To paraphrase, he submits that imposition of the maximum sentence under such circumstances necessarily evinces a failure to consider the "background of the offender" as required by *Milbourn, supra,* p 651. He offers no support for this position. However, as elucidated in *Houston, supra,* the primary consideration in sentencing a particular defendant is whether the sentence imposed is proportional to the seriousness of the offense when considered in conjunction with the particular defendant. While circumstances warranting imposition of the maximum sentence with respect to a defendant who had no prior adult offenses hopefully would be rare, the present case merits such a sentence.

Affirmed.

D. A. TEEPLE, J., concurred.

MARILYN KELLY, P.J. I concur in the result only.