# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 5, 2018

Plaintiff-Appellee,

v

No. 316110
Wayne Circuit Court
LC No. 12-005176-FC

BRIAN CHRISTOPHER LEE,

Defendant-Appellant.

ON REMAND

Before: TALBOT, C.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

This case returns to us on remand from our Supreme Court to consider only defendant's claim that his sentence was disproportionate under the standard set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *People v Lee*, ___ Mich ___; 906 NW2d 782 (2018). For the reasons set forth in this opinion, we vacate defendant's sentence and remand for resentencing.

As detailed in our prior opinion, defendant was tried jointly with three other defendants for the abduction, torture, and murder of two young women on February 28, 2012. *People v Brown*, unpublished per curiam opinion of the Court of Appeals, issued January 12, 2016 (Docket No. 314341).[1] These women were murdered in part because they refused to discontinue the prosecution of defendant for firing at least seven bullets at their vehicle on February 8, 2012.[2] Defendant was ultimately convicted by a jury of four counts of second-degree murder, MCL

---

[1] By order of this Court, defendant's appeal has been deconsolidated from the other three appeals decided in our prior opinion. *People v Lee*, unpublished order of the Court of Appeals, entered March 15, 2018 (Docket No. 316110).

[2] In regard to that February 8, 2012 shooting, defendant was convicted of two counts of assault with intent to murder and possession of a firearm during the commission of a felony. *People v Lee*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2015 (Docket No. 313302).

-1-

750.317, and we subsequently directed that defendant's judgment of sentence be corrected to reflect two convictions of second-degree murder. Defendant was sentenced to concurrent terms of 540 to 960 months' imprisonment, an upward departure from the recommended minimum sentence range of 270 to 450 months.

Defendant challenged the departure sentence on the ground that the trial court failed to articulate substantial and compelling reasons justifying the departure sentence. Because the trial court had rendered defendant's sentence before *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), had been decided—and as required under this Court's then-controlling opinion in *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015), aff'd in part, rev'd in part 500 Mich 453 (2017)—we remanded this case to the trial court for a *Crosby*[3] hearing. On February 20, 2018, in lieu of granting leave to appeal, our Supreme Court reversed our remand order and remanded this case to this Court "for plenary review of the defendant's claim that his sentence was disproportionate under the standard set forth in *People v Milbourn*, 435 Mich 630, 636 (1990)." *Lee*, ___ Mich at ___; 906 NW2d at 782.

We review for an abuse of discretion a trial court's departure sentence. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) ("*Steanhouse II*"). The principle of proportionality is applied to determine whether the sentence was reasonable. *Id*. The principle of proportionality requires sentences "to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. In *Steanhouse II*, our Supreme Court reiterated "that the key test" to determining the reasonableness and proportionality of a sentence "is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse II*, 500 Mich at 474-475 (quotation marks and citation omitted). Factors that may be considered under the proportionality standard include, but are not limited to: (1) the seriousness of the offense, (2) factors inadequately considered by the guidelines, and (3) factors not considered by the guidelines, including the relationship between the defendant and the victim, the defendant's remorse, and the defendant's potential for rehabilitation. *People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (citation omitted). However, when rendering a departure sentence, the trial court "must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). And if "it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified." *Id*.

In this case, we conclude that the trial court failed to explain why the departure sentence was more proportionate than a sentence within the recommended sentencing guidelines range. See *id*. In rendering its sentencing decision, the trial court noted that defendant's role in the abduction, torture, and murder of the two young women "amounted to being a disciple of destruction." Defendant's job was "to follow and carry out the wishes of a madman," his codefendant, and defendant followed his directives. In that regard, the court referenced the

---

[3] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

shooting on February 8, 2012, and noted that defendant faithfully carried out his codefendant's instruction to shoot at these same victims if they had attempted to leave in their vehicle. Although defendant had questioned whether his codefendant was serious with regard to the shooting directive, the court noted, defendant then shot at their vehicle numerous times, almost killing one of victims who was struck in the head by a bullet fragment. Instead of trying to convince his codefendant that the "request was insane," defendant was "proud to do his bidding" and did what he was told to do. The trial court also referred to the fact that, after his codefendant was unsuccessful in convincing the women to drop the charges arising from the shooting, defendant "continued to follow his lead, riding with him to get the money to pay for their execution and burial." In other words, the court noted, instead of taking the opportunity to try to persuade his codefendant not to kill these victims, defendant was his "ride or die soldier," complicit in this heinous plan. Later, the court noted, defendant went to the chosen gravesite "and you made it for them," knowing that the young women were in the "trunk, bound and fearful of losing their lives." After defendant participated in their execution and burial, he celebrated "by indulging in drugs and alcohol[.]" The court concluded that "the guidelines are too low," summarizing that: defendant was the shooter on February 8, 2012; he shot at the victims numerous times on that date; he was present when his codefendant got the money to pay for help with their execution; he abducted and ultimately killed the victims; and he helped dig their graves.

While the trial court gave a lengthy discussion regarding defendant's role in the killing of the two victims, the court's explanation for its sentencing decision was fairly brief. The trial court's explanation for departing from the sentencing guidelines essentially relied on three components: (1) defendant fired shots at the victims on February 8, 2012, (2) a summary of a few pieces of evidence supporting defendant's convictions, and (3) that defendant likely was involved in burying the victims' bodies. These three factors, at least as articulated by the trial court, fail to "explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *Smith*, 482 Mich at 304.

With regard to the trial court's reliance on the earlier shooting, we must consider the scoring of defendant's prior record variables (PRVs). Defendant was initially convicted of four counts of second-degree murder in this case, despite there being only two victims. In our prior opinion, we held that defendant could only be convicted of two counts of murder. *Brown*, unpub op at 25 (Docket No. 314341). Thus, defendant stands convicted of only two felonies here.

In relevant part, MCL 777.57, which governs the scoring of PRV 7, provides:

(1) Prior record variable 7 is subsequent or concurrent felony convictions. Score prior record variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender has 2 or more subsequent or concurrent

convictions ……………………………………….................................. 20 points

(b) The offender has 1 subsequent or concurrent conviction ........ 10 points

(c) The offender has no subsequent or concurrent convictions ...... 0 points

(2) All of the following apply to scoring record variable 7:

(a) Score the appropriate point value if the offender was convicted of multiple felony counts or was convicted of a felony after the sentencing offense was committed.

In this case, the trial court assigned 20 points to PRV 7. Based solely on the use of concurrent felony convictions, defendant would only be scored 10 points under PRV 7, because he had only one concurrent felony conviction to the sentencing offense (i.e., the second count of murder). See MCL 777.57(1). However, defendant was convicted of two counts of AWIM on October 5, 2012. Because these convictions were entered after defendant committed the instant offense, these convictions support the assessment of 20 points under PRV 7. See MCL 777.57(2)(a). The only way to support the trial court's assessment of 20 points to PRV 7 is to include defendant's AWIM convictions connected to the February 8, 2012 shooting when scoring the variable. Therefore, in his brief on appeal to this Court, defendant accurately explained:

> As this Court must vacate two of the four homicide convictions in this matter, . . . absent consideration of the two AWIM convictions from the February 2 incident Mr. Lee would have been properly scored with only 10 points under PRV[ ]7, on the basis of the second homicide conviction here, which would have reduced the total PRV score to 15 points and reduced the PRV level to C, requiring this Court to remand for a resentencing . . . . Accordingly, the proper PRV 7 score of 20 points must rely on the consideration of the subsequent AWIM convictions.

Thus, these two earlier assaults against the victims were accounted for by defendant's PRV score. Indeed, were it not for that incident, defendant's PRV total would have been 10 points lower, a total PRV score of 15. A PRV score of 15 would have placed defendant in a lower cell under the applicable sentencing grid, MCL 777.61. Instead of a minimum sentence range of 270 to 450 months or life, the recommended range would have been 225 to 375 months or life. See MCL 777.61. Thus, the February 8, 2012 shooting increased the maximum sentence recommended by the guidelines by 75 months. The trial court gave no explanation regarding why or how the scoring of PRV 7 failed to adequately account for the prior shooting. Accordingly, the trial court's explanation of its decision is inadequate. See *People v Dixon-Bey*, 321 Mich App 490, 526-527; __ NW2d __ (2017) (finding a trial court's explanation of a departure sentence inadequate where most, if not all, of the stated reasons for the departure were contemplated by one or more sentencing guidelines variables, and the trial court offered no rationale for why the scoring of the variables was not sufficient).

The second reason articulated by the trial court for departing was not so much a reason for departing, but rather, a summary of circumstantial evidence linking defendant to the murders of the two young women. This was simply evidence that caused defendant to be convicted of murder. It would stand to reason, then, that the murder convictions, and the recommended minimum sentences that result because of those convictions, would account for this evidence. The trial court failed to articulate any rationale explaining why this evidence should lead to a

departure sentence, such as a conclusion that the sentencing guidelines failed to account for the seriousness of this particular murder. See *id.* at 527.[4]

The third reason articulated by the trial court was that defendant was likely involved in burying the bodies after the victims were killed. The trial court assessed 15 points to OV 19, MCL 777.49. This score is appropriate if defendant "used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services[.]" MCL 777.49(b). It is unclear why this variable was scored at 15 points. The variable was initially scored at zero; however, at sentencing, the parties agreed that 15 points should be assigned to the variable. The trial court simply took this agreement at face value, and there was no explanation regarding why this score was appropriate.

Perhaps OV 19 was scored at 15 points because defendant participated in the act of burying the victims' bodies. Nothing else in the trial court's recitation of the facts of the case could be perceived as interfering with the administration of justice or the rendering of emergency services. See MCL 777.49(b). Thus, it seems likely that the act of burying the victims' bodies was already included in the scoring of the offense variables. The trial court did not articulate why the scoring of this variable was insufficient under the circumstances, and thus, this reason fails to justify the departure sentence. See *Dixon-Bey*, 321 Mich App at 526-527. In sum, the trial court's stated justifications for departing from the sentencing guidelines were all insufficient.

Moreover, the trial court failed to explain or provide reasons for the extent of its chosen departure sentence. The trial court's duty is not simply to articulate factors warranting a departure and then state a sentence. The trial court must also explain how the *extent* of the departure is more proportionate than a different sentence would have been. *Steanhouse II*, 500 Mich at 476. As our Supreme Court explained in *Smith*, 482 Mich at 304, "[a] sentence cannot be upheld when the connection between the reasons given for the departure and the extent of the departure is unclear." As the *Milbourn* Court recognized, trial courts all too often state reasons for departing that would apply equally to a longer or shorter sentence. *Milbourn*, 435 Mich at 660 (citation omitted). In this case, the rationale for the particular departure chosen by the trial court is not apparent at all. On remand, should the trial court again depart from the guidelines, it must explain on the record why the extent of the particular departure it imposes is proportionate.[5]

---

[4] While the trial court gave a lengthy discussion of defendant's role in the crime before it stated that it would depart from the sentencing guidelines, the trial court did not explain why the sentencing guidelines would not adequately account for these facts. The sentencing guidelines are "the best 'barometer' of where on the continuum from the least to the most threatening circumstances a given case falls[,]" *Milbourn*, 435 Mich at 656, and the trial court did not explain why the particular circumstances of the present matter were not adequately accounted for by these guidelines.

[5] Our Supreme Court in *Smith*, 482 Mich at 306-310, described some potential ways in which the trial court may explain the extent of its departure.

We are mindful that factors exist under the circumstances of this case that may justify a departure sentence. There was a prior relationship between defendant and the victims, who were killed to silence them with regard to the prior shooting. See *id*. at 660-661. Further, the facts of the crime could be considered more serious than is contemplated by the sentencing guidelines, which is demonstrated by defendant's total OV score of 195 points—a score 95 points higher than necessary to place him in the highest OV level under the second-degree murder sentencing grid. See MCL 777.61. Where a defendant's total OV score far exceeds the maximum score contemplated by a particular grid, a proportionate sentence may well depart from the guidelines because "the Legislature did not contemplate a defendant with such a high OV score[.]" *Smith*, 482 Mich at 308-309.[6]

Further, reference to the sentencing grid for second-degree murder could be used to justify the extent of the departure. See *id*. at 309-310 (explaining that in justifying a departure sentence, it is useful to reference the sentencing guidelines as a means of comparison). The next most severe sentencing range contemplated by the applicable sentencing grid is one of 315 to 525 months or life, and the range that follows, which is the highest range contemplated by the grid, is 365 to 600 months or life. MCL 777.61. It would seem appropriate to consult either of these two ranges to justify the departure, given the facts described above that were not articulated by the trial court. Defendant's 540-month minimum sentence would be a slight departure from the lower of these two cells, and well within the higher cell. Thus, it would appear that by examining the extenuating circumstances that typically warrant a departure sentence, see *Dixon-Bey*, 321 Mich App at 525 and n 9, and consulting the applicable sentencing grid, see *Smith*, 482 Mich at 309-310, defendant's sentence, or even a more severe one, could be justified.

However, this Court is limited to reviewing the trial court's decision and must "avoid supplementing or otherwise justifying the trial court's otherwise insufficient reasoning with reasoning of its own." *Dixon-Bey*, 321 Mich App at 531 n 11. It is the trial court's duty to justify a particular departure sentence, and this Court must not attempt to take on that task. *Smith*, 482 Mich at 304. Accordingly, we vacate defendant's sentence and remand this matter for resentencing.

Sentence vacated and remanded for resentencing. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

[6] See also *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995) ("Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted.").