*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 3, 2019

Plaintiff-Appellee,

v

No. 345161
Kent Circuit Court
LC No. 18-002536-FC

DERREK SHUNI BANKS, JR.,

Defendant-Appellant.

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the sentence imposed for his plea-based conviction of perjury during an examination held pursuant to a prosecutor's investigative subpoena, MCL 767A.9(1)(b). The trial court sentenced defendant to serve 16 to 80 years' imprisonment—an upward departure from the sentencing guidelines range of 51 to 106 months. We conclude that the trial court did not abuse its discretion in imposing the departure sentence; it was proportionate to the seriousness of the circumstances surrounding the offense and the offender. Accordingly, we affirm.

Defendant pleaded guilty to perjury. At the plea hearing, defendant admitted that on January 22, 2018, he had been placed under oath and gave testimony pursuant to a prosecutor's investigative subpoena. The subpoena concerned an investigation into the 2018 murder of Curtis Swift, who allegedly was a passenger in a car that was involved in a drive-by shooting and homicide in 2013. Cameron Wright was the alleged shooter in the 2013 murder, which was also being investigated. According to the prosecution, Wright has now been charged with both the 2013 killing and the 2018 murder of Swift. The prosecution theorized that defendant was a friend or acquaintance of Wright's and was complicit in the Swift homicide. Swift was supposedly murdered to prevent him from testifying against Wright about the 2013 shooting.

---

[1] *People v Banks*, unpublished order of the Court of Appeals, entered October 12, 2018 (Docket No. 345161).

Defendant admitted at the plea hearing that he made false statements under oath to the prosecutor regarding his knowledge of and contact with Wright. The prosecution submitted a transcript of text messages exchanged between defendant and Wright on the day of Swift's murder, an illustration representing defendant's location at the time the text messages were being sent, a transcript of defendant's testimony in relation to the investigative subpoena, and numerous misconduct reports relative to defendant's behavior while in prison. Defendant did not challenge the submission of these documents. The prosecution urged the trial court to depart from the minimum sentence guidelines range of 51 to 106 months considering that defendant's falsehoods sought to obstruct, hinder, and delay two murder investigations and that defendant was likely involved in the murder of Swift. For the reasons discussed below, the trial court imposed a minimum sentence of 16 years (192 months). Defendant now appeals.

We review for reasonableness "[a] sentence that departs from the applicable guidelines range." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), our Supreme Court elaborated on the "reasonableness" standard, stating:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

"A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). Factual findings related to a departure must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Lawhorn*, 320 Mich App 194, 208-209; 907 NW2d 832 (2017).

The key test is not whether a sentence departs from or adheres to the guidelines range, but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Trial judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Milbourn*, 435 Mich at 661. A sentence within the guidelines might be disproportionality lenient. *Id.*

A defendant's extensive criminal history may create a legitimate concern for the protection of society, justifying a longer prison sentence. *People v Solmonson*, 261 Mich App 657, 671-672; 683 NW2d 761 (2004). "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995). In *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part, rev'd in part on other grounds 500 Mich 453 (2017), this Court indicated:

Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Citations omitted; see also *People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017).]

When determining whether a sentence is proportionate to the offender, a trial court can consider uncharged offenses, pending charges, and even acquittals if supported by reliable evidence. See *People v Lawrence*, 206 Mich App 378, 379; 522 NW2d 654 (1994). This Court has specifically indicated that a departure from the guidelines may be proportionate on contemplation of "facts underlying uncharged offenses." *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994); *People v Parr*, 197 Mich App 41, 46; 494 NW2d 768 (1992). Finally, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted).

Here, in the process of imposing the sentence, the trial court noted that defendant was 26 years old, that he had one prior felony conviction, that he had a juvenile record, that he had served time in prison, that he had been on probation and parole in the past, and that he lied numerous times under oath with respect to his testimony elicited by the prosecutor pursuant to the investigative subpoena. The trial court next acknowledged that it was departing from the guidelines range and that it fully understood that the departure had to be reasonable and proportionate under *Lockridge* and *Milbourn*. The court expressed that the departure sentence being imposed indeed satisfied the proportionality requirement. In support, the trial court proceeded to state that the guidelines did not adequately address the circumstances of this case and that it was adopting the reasons favoring departure set forth in the prosecutor's sentencing memorandum and those voiced by the prosecutor at the sentencing hearing. The trial court also observed that defendant's record in prison, which included over 40 misconduct citations, many of which involved violence or threats of violence, was "outrageous." Finally, touching on the subject of the prospects of rehabilitation, the court opined that defendant probably did not have the capacity to live in society and to conform to society's laws.

We conclude that the trial court did not abuse its discretion by giving defendant a 16-year minimum sentence. First, defendant's extensive history of misconduct while in prison and his lack of potential for rehabilitation are factors that are not considered by the guidelines. *Walden*, 319 Mich App at 352-353; *Steanhouse*, 313 Mich App at 46. There was sufficient evidentiary support for these two determinations. Additionally, the trial court referenced the numerous false statements made by defendant relative to his relationship and interactions with Wright, and, by adopting the prosecution's arguments, the court agreed that defendant had sought to hinder and interfere with a murder investigation, which actually encompassed two homicides. The 10 points assessed for OV 19 for interference with the administration of justice, MCL 777.49(c), were woefully inadequate to account for the extent of the fabrications made under oath and the fact

that defendant essentially *impeded two murder investigations*. Further, although not charged with or convicted of a homicide, an inference that defendant was involved in Swift's death—the murder of a witness—could reasonably be drawn from defendant's location and his text messages with Wright around the time of Swift's murder, as viewed in conjunction with defendant's false statements made during the investigation into that murder. See *Coulter*, 205 Mich App at 456; *Parr*, 197 Mich App at 46 (a sentencing court can consider facts underlying uncharged offenses). In sum, given defendant's abhorrent conduct in prison, his questionable potential for rehabilitation, his testimonial deceit in murder investigations, and his entanglement in the killing of a witness, all of which were recognized by the court,[2] we hold that defendant's sentence, including the extent of the departure, was proportionate to the seriousness of the circumstances surrounding the offense and the offender.

We affirm.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause

---

[2] Although not remarked upon by the trial court, we additionally note that defendant was explicitly warned before he gave his grand jury testimony that perjury "would be punishable by a maximum of life," and defendant indicated his understanding.