*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
March 24, 2022

v

No. 355891
Shiawassee Circuit Court
LC No. 18-003077-FH

JAMES BRADLEY,

        Defendant-Appellant.

Before: CAVANAGH, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant pleaded guilty to possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), as a second-offense habitual offender, MCL 769.10. The legislative sentencing guidelines provided for a minimum sentence range of 36 to 75 months' imprisonment. The trial court sentenced defendant to serve 118 to 360 months' imprisonment, reflecting a 43-month upward departure from the guidelines range. Defendant appeals by leave granted,[1] arguing that the upward departure was unreasonable because it violated the principle of proportionality. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On March 10, 2018, as part of a Michigan State Police (MSP) investigation into narcotics trafficking, officers conducted a traffic stop on a car that they suspected was involved in the drug trade. Defendant was sitting in the rear driver's side seat; Savannah VanDiver was sitting in the front passenger seat, and another woman was driving. An MSP trooper searched the car, assisted by a narcotics-detection dog, and the trooper found two bags of methamphetamine in the backseat. The methamphetamine weighed approximately 135 grams. A search of defendant's person also uncovered a digital scale. VanDiver later stated that they had obtained the methamphetamine from a hotel in Kalamazoo and that she and defendant intended to use and distribute the drugs.

---

[1] *People v Bradley*, unpublished order of the Court of Appeals, entered February 25, 2021 (Docket No. 355891).

VanDiver further indicated that she and defendant had made five to eight trips to Kalamazoo for purposes of distributing methamphetamine.

Defendant, as a second-offense habitual offender, pleaded guilty to possession with intent to deliver methamphetamine. In exchange, the prosecution agreed to dismiss a charge of tampering with evidence and some misdemeanor driving charges in an unrelated district court file. Defendant informed the court at the plea hearing that he had possessed more than 130 grams of methamphetamine in the vehicle and that he had planned to sell the drugs. Defendant's minimum sentence guidelines range was calculated at 36 to 75 months' imprisonment. See MCL 777.13m; MCL 777.63. The trial court determined that the guidelines failed to consider or failed to adequately consider the nature of defendant's plea agreement, the pattern of defendant's criminal conduct, and the nature and quantity of the drugs that defendant intended to sell. Accordingly, the trial court departed from the guidelines and imposed a sentence of 118 to 360 months' imprisonment. Defendant subsequently moved for resentencing, arguing that the upward departure was unreasonable. The trial court denied the motion, concluding that the departure was proportional to the seriousness of the circumstances surrounding the offense and the offender.

## II. ANALYSIS

On appeal, defendant argues that the trial court unreasonably departed from the sentencing guidelines range. This Court reviews for reasonableness "[a] sentence that departs from the applicable guidelines range." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), our Supreme Court provided elaboration on the "reasonableness" standard, stating:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

Factual findings related to a departure must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Lawhorn*, 320 Mich App 194, 208-209; 907 NW2d 832 (2017). For purposes of sentencing, "a court may consider all record evidence, including the contents of a PSIR,[2] plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

The key test is not whether a sentence departs from or adheres to the guidelines range but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Sentencing judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Milbourn*, 435 Mich at 661. A sentence within

---

[2] PSIR stands for presentence investigation report.

the guidelines might be disproportionality lenient. *Id.* "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995).[3] In *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019), this Court indicated that the factors that may be considered by a trial court under the proportionality test include, but are not limited to, the following:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Quotation marks and citation omitted.]

"[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). "When fashioning a proportionate minimum sentence that exceeds the guidelines recommendation, a trial court must justify why it chose the particular degree of departure." *People v Smith*, 482 Mich 292, 318; 754 NW2d 284 (2008). We note that our Supreme Court has now held "that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019).

In this case, the trial court focused on three factors to justify the sentencing departure. First, the court highlighted defendant's plea agreement, finding that he received a significant benefit that the guidelines did not take into consideration when the prosecution dismissed the charge of tampering with evidence. Second, the trial court determined that the scoring of Offense Variable (OV) 15 gave no weight to the nature and quantity of the methamphetamine that defendant possessed. And third, the court found that the scoring of OV 13 failed to contemplate the continuing pattern of defendant's criminal behavior.

Beginning with the plea agreement, defendant argues that the trial court was not permitted to consider the existence of the agreement *itself* as a factor supporting departure; otherwise, "every plea deal would authorize [a] departure." We first observe that in *People v Armstrong*, 247 Mich App 423, 426; 636 NW2d 785 (2001), this Court stated:

> We also note that the prosecutor's decision, in exchange for defendant's guilty plea, to dismiss a charge of first-degree CSC, which carries a potential life sentence, and the fact that defendant was not charged with attempted CSC for trying to have the victim perform oral sex on him are additional factors that the court can consider when deciding whether departure is warranted. [Citing *People v Williams*,

---

[3] We emphasize, however, that although the guidelines are no longer mandatory, they remain a highly relevant consideration for purposes of exercising sentencing discretion, and trial courts must consult and take into account the guidelines when imposing sentence. *Lockridge*, 498 Mich at 391.

223 Mich App 409, 411; 566 NW2d 649 (1997); *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994); and *People v Brzezinski (After Remand)*, 196 Mich App 253, 256; 492 NW2d 781 (1992).]

"Further, this Court has recognized that a sentencing court may consider the nature of a plea bargain and the charges that were dismissed in exchange for the plea for which the court is sentencing." *Coulter*, 205 Mich App at 456.[4] And our Supreme Court has "recognized that conduct beyond the sentencing offense can be considered for purposes of departing from the guidelines." *People v McGraw*, 484 Mich 120, 130 n 30; 771 NW2d 655 (2009).

We note that the dismissal of a charge as part of a plea agreement does not equate to an acquittal following trial; therefore, *Beck* does not apply. In *Beck*, 504 Mich at 626-627, our Supreme Court explained:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself.
>
> Unlike . . . uncharged conduct . . ., conduct that is protected by the presumption of innocence may not be evaluated using the preponderance-of-the-evidence standard without violating due process. While we recognize that our holding today represents a minority position, one final consideration informs our conclusion: the volume and fervor of judges and commentators who have criticized the practice of using acquitted conduct as inconsistent with fundamental fairness and common sense. [Quotation marks and citations omitted.]

For purposes of sentencing and under the rationale in *Beck* as set forth in this passage, we conclude that uncharged conduct is comparable to conduct that was charged, but which charge was later dismissed as part of a plea agreement—there is no constitutional impediment to taking into consideration a dismissed charge under a plea deal in making a decision to depart from the guidelines.

In this case, the trial court stated at sentencing that defendant received a significant benefit by the plea-based dismissal of the tampering-with-evidence charge. Had that charge not been dismissed, defendant faced the prospect of *consecutive* sentencing upon a guilty verdict. See MCL 750.483a(10) ("The court may order a term of imprisonment imposed for a violation of this section to be served consecutively to a term of imprisonment imposed for any other crime including any other violation of law arising out of the same transaction as the violation of this section.").

---

[4] The language in *Coulter*, *id.*, which also indicated that "acquittals" can be considered in making a decision to depart from the guidelines range was overruled in *Beck*, 504 Mich at 629.

-4-

Accordingly, the trial court found that the guidelines did not consider the nature of the plea agreement and the dismissed charge of tampering with evidence. This ruling is consistent with the above-cited caselaw, and we conclude that the trial court did not err in considering the dismissed charge of tampering with evidence. Defendant attempts to distinguish the caselaw by arguing that contrary to the factual circumstances addressed in the caselaw, the instant case involved the dismissal of a *lesser* charge for defendant's plea of guilty to the *highest* charge, not the reverse. This argument lacks merit because nowhere in *Armstrong*, 247 Mich App 423, *Williams*, 223 Mich App 409, *Coulter*, 205 Mich App 453, or *Brzezinski*, 196 Mich App 253, did this Court even remotely suggest that the nature of a plea agreement can only be considered for purposes of a departure sentence when a defendant pleads no contest or guilty to a lesser charge, with the higher or highest charge being dismissed. We also note that while the offense of possession of methamphetamine with intent to deliver is a higher charge than tampering with evidence, the tampering offense does entail the potential for consecutive sentencing. Finally, contrary to defendant's argument, the trial court did not treat the mere fact that a plea agreement was reached as a basis for the departure.

Next, in a vague, cursory argument, defendant contends that the trial court violated the principle of proportionality by using as a basis for departure the fact that OVs 13 and 15 could not be scored in an appropriate manner given the circumstances of the case. Defendant complains that the trial court effectively punished him for conduct in which he did not engage, i.e., conduct covered by OVs 13 and 15.

OV 15 addresses "aggravated controlled substance offenses." MCL 777.45(1). A sentencing court must assess 50 points if "[t]he offense involved the manufacture, creation, delivery, possession, or possession with intent to manufacture, create, or deliver of 50 or more grams but less than 450 grams of any mixture containing a controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(*iv*). MCL 777.45(1)(c). Methamphetamine is not classified within any of these categories, even though defendant possessed more than 130 grams of methamphetamine. Only five points could be scored for OV 15. MCL 777.45(1)(h).[5]

Further, OV 13 is scored on the basis of a "continuing pattern of criminal behavior." MCL 777.43(1). For controlled substance offenses, OV 13 must be assessed 10 points for a pattern of criminal activity involving three or more violations of MCL 333.7401(2)(a)(*i*) to (*iii*) or MCL 333.7403(2)(a)(*i*) to (*iii*). MCL 777.43(1)(d) and (e). Because defendant's conduct fell under a different statutory provision regarding methamphetamine, MCL 333.7401(2)(b)(*i*), the trial court assessed zero points for OV 13. See MCL 777.43(1)(g).

In this case, the trial court discussed OVs 13 and 15 and explained why they did not adequately address defendant's conduct:

---

[5] Under MCL 777.45(1)(h), five points is the proper score when "[t]he offense involved the delivery or possession with intent to deliver marihuana or any other controlled substance or a counterfeit controlled substance or possession of controlled substances or counterfeit controlled substances having a value or under such circumstances as to indicate trafficking."

And if we look at Offense Variable 15 . . .[,] the Court assessed five points based on statements that you possessed methamphetamine with the intent to deliver it. But, this gives inadequate weight to the circumstances that surrounds your possession. By your own admission you possessed more than a hundred and thirty grams (130 gr) of methamphetamine and you planned on selling it. . . . And under OV 15 our Legislature allows the courts to assess more points to Defendants who possess large quantities of narcotics. And the catch here is that, that it applies only to narcotics, and not to methamphetamines. If you possess narcotics, the Court would have properly scored fifty (50) points for OV 15.

Similarly, OV 13 examines patterns of felonious conduct. In the Presentence Investigation Report your Co-Defendant estimates that you made five to eight trips to Kalamazoo to buy methamphetamine. The guidelines don't consider that conduct, either. Again, that's because the guidelines limit their consideration to narcotics, and not to methamphetamines, at least those variables.

And between those two variables, thirteen (13) and fifteen (15), the Court's precluded from assessing sixty (60) points that it would otherwise would be able to do. OV 13 doesn't consider the pattern of your criminal conduct, and OV 15 gives too little weight to the nature and quantity of the drugs that you planned to sell.

The trial court, while accurately scoring OVs 13 and 15 at zero and five points respectively, essentially determined that defendant's possession with intent to deliver *methamphetamine* on multiple occasions was worthy of scores under OVs 13 and 15 comparable to scores associated with drugs expressly covered by those OVs. In other words, the trial court concluded that the guidelines—specifically OVs 13 and 15—inadequately take into consideration methamphetamine-related drug crimes. See *Lampe*, 327 Mich App at 126. Given the destructive nature of methamphetamine, we find this determination entirely reasonable.

In arguing that the trial court erred by substituting methamphetamine for covered narcotics under OVs 13 and 15, defendant fails to realize that OVs 13 and 15 were properly assessed by the court based on the fact that the covered narcotics were not involved in this case and that the court simply found that OVs 13 and 15 were inadequate when addressing methamphetamine, thereby justifying a departure. One must remember that the guidelines are merely advisory. *Lockridge*, 498 Mich at 365. Defendant maintains that under the trial court's logic he could be similarly sentenced if defendant "had the same amount of salt as he had methamphetamine." But this argument wholly neglects contemplation of reasonableness, as well as the fact that possessing salt is generally not a crime. In sum, we hold that defendant's arguments raised on appeal do not warrant reversal.

We affirm.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Deborah A. Servitto