# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

AUTREZ LAMAR POLLARD,

     Defendant-Appellant.

UNPUBLISHED
June 26, 2018

No. 336700
Wayne Circuit Court
LC No. 16-006767-01-FH

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of second-degree criminal sexual conduct (CSC), MCL 750.520c. He was sentenced as a fourth habitual offender, MCL 769.12, to 30 to 45 years' imprisonment for both convictions. Defendant argues that the trial court's refusal to allow any mention of the lack of DNA evidence violated his constitutional rights to a defense and a fair trial. He also contends that he is entitled to resentencing because his sentence, which reflected a departure from the minimum guidelines range, was unreasonable and because the trial court improperly considered defendant's refusal to admit guilt. We disagree in all respects and affirm both the convictions and the sentence.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant took his then six-year-old biological daughter to the home of several relatives. Late that evening, defendant and his daughter settled in on the floor to sleep. Several other adults and children were sleeping, or preparing to sleep, in the same room. At one point, defendant ordered his daughter to remove her shorts and underwear and get on top of him. She complied. She testified that she felt his "private part" touching hers, that he also touched her "butt" and "private part" with his hands, and that he kissed her on the mouth. Another adult in the room, who was awake on a couch with her child and the sleeping father of her child, heard the sound of intimate kissing. She was unable to wake her partner, so she took his phone and, using it as a flashlight, saw defendant lying on his back with his daughter face down on top of him. She could see defendant's scrotum and his daughter's panties on the floor. She ran upstairs and woke the couple who owned the house, who ran downstairs and saw the same thing. They removed defendant's daughter from the room and called the police. Defendant left the house before police arrived. The child was taken to the hospital, where she was examined and swabbed for DNA. No injuries were found, but the examination did not rule out sexual assault.

-1-

At the final conference one week before trial, the prosecutor informed the trial court that no DNA evidence was yet available, although there was a possibility that preliminary evidence might become available before trial. That evidence would merely show whether male DNA was found. The trial court denied defendant's request for an adjournment until the DNA evidence became available and ruled that no DNA evidence would be admitted even if it became available before trial. The court ordered that neither side was to mention DNA evidence but clarified that defendant could argue that there was no physical evidence tying him to the alleged crime.

The jury found defendant not guilty of first-degree CSC, MCL 750.520b, but guilty of two counts of second-degree CSC. The trial court sentenced defendant as a fourth habitual offender to concurrent prison terms of 30 to 45 years for the convictions, which was a substantial upward departure from the minimum guidelines range of 36 to 142 months.

## II. DNA EVIDENCE

Defendant first argues that his constitutional rights to a fair trial and to present a defense were violated where the trial court unreasonably denied defendant the opportunity to raise the issue of the lack of DNA evidence in the prosecution's case. We need not explore this issue in detail, considering that, assuming error, it was plainly harmless.

During the trial, a sexual-assault nurse examiner testified that she had swabbed the victim for DNA evidence. And consistent with the trial court's pretrial ruling, defendant, without mentioning DNA in particular, was allowed to argue that no physical evidence tied him to the crime. Defense counsel argued, "There are no findings as it relates to any physical connection in terms of the[] allegations that have been set forth, ladies and gentlemen." Counsel further implored, "You didn't hear anything about any scientific evidence." Additionally, defense counsel maintained to the jury that the victim's mother had signed a release of her daughter's medical records relating to the collection of urine, blood, and anything on her clothing, yet the prosecution presented no physical or scientific evidence tying defendant to the crime. Taking into consideration the nurse examiner's testimony, as well as the evidence that various specimens were collected from the victim, in conjunction with defense counsel's arguments about the lack of any physical or scientific evidence, which was not countered by the prosecutor, it is reasonable to believe that the jurors were left with the impression that no DNA evidence connected defendant to the sexual assault. Under these circumstances, defendant has failed to demonstrate that after examination of the entire record, it affirmatively appears that it is more probable than not that the assumed evidentiary error was outcome determinative; there was no miscarriage of justice. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), citing MCL 769.26 (requiring a miscarriage of justice to reverse on evidentiary error). Moreover, there was strong evidence that defendant committed second-degree CSC.[1]

---

[1] We would also reiterate that, despite the victim's testimony of vaginal penetration, the jury acquitted defendant of first-degree CSC, which charge required a showing of sexual penetration, MCL 750.520b(1), perhaps suggesting that the lack of physical or scientific evidence, such as DNA evidence, played a role in the acquittal.

Defendant also contends that the trial court erred in denying his request for an adjournment to await the DNA results. However, with respect to adjournments, this Court has stated that "[e]ven with good cause and due diligence, the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the" denial. *People v Coy*, 258 Mich App 1, 18-19; 669 NW2d 831 (2003). Assuming good cause and due diligence in the instant case, defendant cannot show any prejudice, given that he communicated to the jury that there was no physical or scientific evidence connecting defendant to the offense, implicitly encompassing the DNA swab performed by the nurse examiner, yet he was still convicted.[2]

## III. SENTENCING ISSUES

Defendant next argues that the trial court's imposition of a sentence that departed upward substantially from the minimum guidelines range was unreasonable and disproportionate. We disagree.

We review for reasonableness "[a] sentence that departs from the applicable guidelines range." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), our Supreme Court provided some much needed elaboration on the "reasonableness" standard, stating:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

The key test is not whether a sentence departs from or adheres to the guidelines range, but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Trial judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Milbourn*, 435 Mich at 661. A sentence within the guidelines might be disproportionality lenient. *Id.* "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995). In *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part, rev'd in part on other grounds 500 Mich 453 (2017), this Court observed:

---

[2] We must also take note of the entirely speculative nature of defendant's arguments concerning DNA, as a possibility apparently existed that incriminating DNA evidence might be the result of the testing.

Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Citations omitted.]

At sentencing, defendant's allocution can only be described as bizarre, indicating that the court could rule "only by an undisclosed presumption of an assumed intention" that "may be deemed the practice of witchcraft or satanic c[abal]," and that defendant was forbidding the commercial use of his name for profit. Defendant claimed that, consistently with religious doctrine, he had "not caused an injury to another living man, woman, or child."[3] Defendant further stated, "I did not accept any offer to, nor do I consent to, nor will I go to jail, go to prison, pay, or discharge any fine, fees, court costs, nor taxes of any kind." Defendant, however, is currently housed with the Department of Corrections after the trial court sentenced him to a minimum prison term of 30 years on a minimum guidelines range of 36 to 142 months' imprisonment. The trial court explained:

Your sentencing guidelines of 36 to 142 [months] . . . are woefully inadequate to address really the disgusting and awful nature of your crime, and your steadfast unwillingness to come to terms with it or register any regret. And there is nothing in the sentencing guidelines that takes into account the fact that this crime was committed against your biological daughter, which I think really does add a whole []other layer of horror to this thing.

[A]nd she was six years old and . . . the crime was witnessed, or at least partially witnessed by family members of yours who willingly came to court and testified against you, which I'm sure was very difficult for them.

Your six year old daughter is never going to get over this. I mean it's just one of the worst and most horribly traumatic events that can happen in any child's life.

The fact that you were actually acquitted of criminal sexual conduct in the first degree only means that the jury wasn't entirely satisfied that there had been penetration or intercourse. . . . [A]lthough the child's description of what happened sort of indicated that it was, the jury g[a]ve you the benefit of the doubt which, you know, I think was probably . . . appropriate. . . . .

But . . . I think the case, this case really does cry out for a departure from the sentencing guidelines, and . . . depart I will do. And I think this departure is

---

[3] We note that, according to defendant's presentence investigation report, he was convicted by plea in 1999 of assault with intent to commit murder.

reasonable and proportionate under the circumstances. It's still probably less than you would've received if you'd been convicted of CSC 1.

We cannot conclude that the 30-year minimum sentence imposed by the trial court constituted an outcome falling outside the range of reasonable and principled outcomes, i.e., that the court abused its discretion. *Babcock*, 469 Mich at 269. Given the familial relationship between defendant, a fourth habitual offender, and the victim – his own biological daughter, the victim's young age at the time of the offense and the trauma inflicted on her, the egregious nature of the sexual assault itself, defendant's horrific brazenness in committing the sexual assault in a roomful of people, including relatives, the resulting division created in the family to the victim's detriment, and defendant's complete lack of remorse all support the trial court's departure sentence.[4] We find very telling that not once in his allocution did defendant even mention his daughter, let alone show concern for her well-being, instead focusing his whole discussion on himself and nonsensical rantings. The trial court did not abuse its discretion in determining that the 30-year minimum sentence was reasonable and proportionate to the seriousness of the offense.

Finally, defendant argues that the trial court improperly punished him for refusing to admit guilt at the sentencing hearing. We initially note that during his allocution defendant did not specifically deny having sexual contact with his daughter; rather, after indicating that he had caused no injury to anyone, defendant merely claimed that he had "not committed a crime" and that there was "nothing on which to convict me," which, considering the general character of defendant's allocution, could have reflected a belief that what he had done to his daughter was not criminal in his eyes. In *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007), this Court stated:

> A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt. However, evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation. To determine whether sentencing was improperly influenced by the defendant's failure to admit guilt, this Court focuses on three factors: (1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. If there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence. [Citations, quotation marks, and alteration brackets omitted.]

Here, the trial court spoke in terms of defendant showing no regret, which is comparable to showing no remorse. And, again, defendant did not specifically state that he was innocent of

---

[4] We note that offense variable 10, MCL 777.40, only provides for a 10-point score, which defendant received, for an offender exploiting a victim's youth or a domestic relationship. Defendant exploited his daughter under *both* criteria and did so for sexual gratification.

having sexual contact with his daughter, nor did the court attempt to get defendant to admit guilt. There is no appearance on the record that had defendant affirmatively admitted guilt, his sentence would not have been so severe. In sum, resentencing is unwarranted.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause