*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DELVON HARTSON,

        Defendant-Appellant.

UNPUBLISHED
October 29, 2020

No. 349972
Wayne Circuit Court
LC No. 16-009813-01-FC

Before: BOONSTRA, P.J., and MARKEY and HOOD, JJ.

PER CURIAM.

Defendant was convicted of two counts of second-degree murder, MCL 750.317, two counts of assault with intent to commit murder (AWIM), MCL 750.83, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 40 to 85 years' imprisonment for each count of second-degree murder, 25 to 60 years' imprisonment for each count of AWIM, and two years' imprisonment for felony-firearm. The trial court also imposed $1,300 in court costs. The murder and AWIM sentences exceeded the minimum sentence guidelines ranges for the offenses. In an earlier appeal, this Court "affirm[ed] defendant's convictions and his felony-firearm sentence, but remand[ed] for the trial court to articulate its reasons for departing from the sentencing guidelines in imposing the second-degree murder and AWIM sentences and to establish a factual basis for the court costs imposed." *People v Hartson*, unpublished per curiam opinion of the Court of Appeals, issued August 9, 2018 (Docket No. 338584); unpub op at 1. On remand, the trial court thoroughly articulated its rationale for sentencing defendant above the guidelines for the murder and AWIM convictions. Defendant now appeals by right, arguing that he is entitled to resentencing because the departure sentences were unreasonable and disproportionate. We disagree and affirm the sentences. But we do agree with defendant's additional argument that he was entitled to at least 784 days of jail credit—none was given. Consequently, we remand for amendment of the judgment of sentence to reflect the proper amount of jail credit.

The facts of this case were previously summarized in the original unpublished opinion, wherein the Court stated:

This case arises from a shooting that occurred at 17510 Fielding in Detroit on October 14, 2016. After driving to that address, defendant's siblings—Tamara Hartson, Tajmas Hartson, Jasmine Hartson, and Yanni Bobo, engaged in a physical altercation with several people in the home. Eventually, the siblings retreated to Tajmas's car; as they were leaving, Tamara stated that she would "have my brother come back and shoot this b***h up." Ronnell Boyd threw a bicycle through the windshield of their car as it departed the scene.

Defendant received several calls from Jasmine immediately after this incident. The cellular phone records showed defendant's phone approaching the area of 17510 Fielding. Several witnesses observed four men in black hoodies approach the house at that address and begin shooting. A witness heard one of the men in hoodies say: "You think yaw [sic] going to get down on my brother and sisters like that." Latricia Howard identified defendant from a photo lineup as one of the shooters.[1] As a result of the shooting, Rashawn Jackson and Ronnell Boyd were killed and Tavona Boyd was injured.

A search warrant was executed at defendant's home. No firearms were found, but officers did find a box for a .45 caliber handgun and .45 caliber ammunition, as well as defendant's concealed pistol licenses (CPL) for a .45 caliber Glock pistol and a 7.62mm short pistol version of an AK-47. Neither weapon was found in defendant's home.

Tajmas testified, admitting to the fight but denying that anyone had made any threats about returning to the house. Defendant's girlfriend testified that she had defendant's cellphone that day, and had exchanged calls with Jasmine after the fight. An unrelated witness, Tamika Winfield, testified that she had seen defendant at a location on McCoy Street "shooting dice" between the relevant hours of 1:00 p.m. and 5:00 p.m. on October 14, 2016.

Defendant was convicted as described. At sentencing, the prosecution requested that the trial court depart upward from the sentencing guidelines. The trial court imposed the sentences described, which exceed the top of the guidelines range by 30 months for the murder convictions and by 15 months for the AWIM convictions. [*Hartson*, unpub op at 1-2 ("sics" in original).]

---

[1] Howard also attributed the referenced statement to defendant, but described it as "Yaw [sic] think you going to f*** with my people."

The recommended minimum sentence guidelines range was 270 to 450 months' imprisonment or life for the murder convictions and 171 to 285 months' imprisonment for the AWIM convictions. Therefore, the minimum sentence of 40 years for the murder convictions exceeded the top end of the guidelines range by 30 months, and the minimum sentence of 25 years for the AWIM convictions exceeded the top end of the guidelines range by 15 months. When the trial court originally sentenced defendant in excess of the guidelines, it did so "without explaining the basis for the departure." *Hartson*, unpub op at 9. On remand, and as directed by this Court, the trial court articulated its rationale for departing from the guidelines, explaining:

So, anyway, you know, in broad daylight you and your band of other people came marching across a field and just opened fire on this house, opened fire with reckless disregard for the danger that that posed. And, you know, although -- and there were a lot of people that were hurt in this case. You know, that and they had nothing to do with this dispute. And I just really believe that the guidelines do not sufficiently take into account the reckless disregard for human life, the danger and the risk that you placed on the community and anybody that was out there at the time that you just started shooting.

* * *

But, you know, you just walked up shooting, didn't ask any questions. . . . I mean, you know, your reckless disregard for the risk that you put not only the people out there on that street in, but your reckless disregard for the impact of this on your own family. . . . .

* * *

You know, there's a lot of things about this case that I felt like the guidelines were just inadequate to address. The egregious nature of this crime—I mean, there was a disabled man, a disabled man that was suffering from renal failure, I don't know exactly what his diagnosis was but he was killed. He was homebound. He didn't have anything to do with any of this. You didn't care, you just went over there shooting and didn't even get the person that did all this stuff, whatever your sister told you happened to her so, you know, I stand by my decision to upwardly depart because I think the facts and circumstances of this case suggest that you are a danger to society, that your likelihood of rehabilitation is not great.

You had prior assaultive cases that were dismissed against you, you know, because witnesses failed to cooperate. You were given a chance under the Holmes Youthful Training Act [HYTA] for a carrying a concealed weapons case. You know, this—and anybody who would do what you did in broad daylight with little to no effort to even disguise your face, I mean, I think it goes without saying that this sentence was warranted given the egregious nature of this crime that you committed and all of the people that were placed in danger by your actions. And so I stand by my original sentence.[1]

We review for reasonableness "[a] sentence that departs from the applicable guidelines range." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In *People v Steanhouse*,

---

[1] The trial court also issued a written departure evaluation that set forth in summarized fashion the court's reasons for departing from the guidelines. It was consistent with the court's ruling from the bench. The trial court additionally established the factual basis for the $1,300 in court costs that were imposed against defendant, and defendant no longer challenges that assessment.

500 Mich 453, 459-460; 902 NW2d 327 (2017), our Supreme Court provided elaboration on the "reasonableness" standard, stating:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

Factual findings related to a departure must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Lawhorn*, 320 Mich App 194, 208-209; 907 NW2d 832 (2017). For purposes of sentencing, "a court may consider all record evidence, including the contents of a PSIR,[2] plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

The key test is not whether a sentence departs from or adheres to the guidelines range, but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Sentencing judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Milbourn*, 435 Mich at 661. A sentence within the guidelines might be disproportionality lenient. *Id.* "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995). In *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part, rev'd in part on other grounds 500 Mich 453 (2017), this Court indicated:

> Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Citations omitted.]

"[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). A trial court imposing a departure sentence must explain how that sentence is individualized to the specific defendant and to the circumstances surrounding the specific offense. *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). When making a decision to depart from the advisory guidelines range, a trial court must sufficiently articulate the reasons or justification for the departure. See

---

[2] PSIR stands for presentence investigation report.

-4-

*Steanhouse*, 500 Mich at 470. We note that recently our Supreme Court held "that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019).[3]

On appeal, defendant's broad argument is that the trial court abused its discretion by imposing sentences that exceeded the guidelines because the sentences were unreasonable and disproportionate. Defendant maintains that the trial court failed to articulate sufficient reasonable grounds for the departures. Defendant further contends that although the court indicated that the violent and egregious nature of the offenses supported the departure sentences, the court did not explain how this case differed from any other case involving murder and AWIM, such that the particular departures were warranted. Defendant also asserts that the trial court, while speaking of reckless disregard for innocent bystanders, "did not explain how such reckless disregard differ[ed] from the *mens rea* element in all murders." According to defendant, the court's additional reliance on past dismissed charges was improper because the court did not explain why the presumption of innocence should be disregarded and because there was no specific finding that the dismissed charges were established by a preponderance of the evidence. Defendant opines that the guidelines take into account many different offense variables that serve as the best barometer for tailoring a sentence for an individual defendant.

We conclude that the trial court did not abuse its discretion because the sentences were proportionate to the seriousness of the circumstances surrounding the offenses and the offender. We initially note that defendant does not challenge the trial court's departure-related determinations that defendant poses a danger to society and that rehabilitation is unlikely. Accordingly, we will not disturb, nor is there any reason to disturb, those conclusions, which do support a departure. *Steanhouse*, 313 Mich App at 46. The primary reason the trial court departed from the guidelines was the violent, reckless, and indiscriminate nature of the criminal act that revealed a complete disregard for innocent bystanders who had nothing to do with the altercation involving defendant's siblings. Although the trial court did not explicitly state that its reasoning distinguished the case from other cases entailing murder and AWIM, this was plainly the court's view or position and defendant's argument to the contrary is unavailing.

---

[3] The trial court noted several times that it could not engage in any judicial fact-finding, although it ultimately did so. The court was wrong—it could make factual findings in regard to giving reasons to depart from the guidelines. Indeed, even with respect to the sentencing variables a trial court can engage in judicial fact-finding. This Court in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016), explained:

> The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with required application of those found facts for purposes of increasing a mandatory minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines advisory, not by eliminating judicial fact-finding.

The only caveat is that a court cannot make a factual finding that a defendant participated in conduct for which he or she was acquitted. *Beck*, 504 Mich at 629.

With respect to defendant's *mens rea* argument, we understand second-degree murder requires proof of malice, which means either the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). But, contrary to defendant's argument, these three forms of criminal intent or *mens rea* do not necessarily take into consideration whether an act was indiscriminate relative to the targeting or identity of victims who were the subject of an attack by gunfire. Moreover, there certainly can be elevated levels of egregiousness as to malice that could be compelling for purposes of justifying a departure. This case presents such a scenario.

Here, the court's consideration of past dismissed charges does not equate to an acquittal by a jury, so they can be considered in various circumstances. See *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994). Also, defendant does not deny that past charges were dismissed because witnesses failed to cooperate, nor does defendant take issue with the court's observation that defendant had been given the benefit of and a chance under the HYTA, yet returned to criminal activity. Finally, the extent of the departures was fairly minimal, and the trial court articulated sufficient reasonable grounds justifying those minimal departures. In sum, the trial court did not abuse its discretion by imposing sentences for second-degree murder and AWIM that exceeded the guidelines ranges for those offenses.

Finally, defendant argues that we must remand the case so that the trial court can amend the judgment of sentence to reflect that he has at least 784 days' jail credit. The prosecution agrees that defendant is entitled to jail credit for time served. Defendant was initially sentenced on February 24, 2017, and that judgment of sentence showed 151 days of jail credit toward the felony-firearm sentence. The trial court issued a new judgment of sentence on May 16, 2019, after the hearing in which the court articulated the reasons for the departure sentences. The new judgment of sentence failed to include any jail credit even though more than 811 days had elapsed between the two sentencing dates. Accordingly, remand is necessary for the trial court to amend the judgment of sentence to reflect the proper amount of credit for time served.

We affirm defendant's sentences but remand for amendment of the judgment of sentence to reflect the amount of jail credit to which defendant is entitled in this case. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Karen M. Fort Hood

-6-