*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER DARNELL MOORE,

        Defendant-Appellant.

UNPUBLISHED
December 1, 2022

No. 359081
Wayne Circuit Court
LC No. 19-005693-01-FH

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of third-degree criminal sexual conduct, MCL 750.520d(1)(b) (sexual penetration by use of force or coercion). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 35 to 75 years' imprisonment. We affirm.

## I. FACTS

This case arises out of the sexual assault of BS on June 30, 2019. At that time, BS was 68 years old and had been diagnosed with dementia. At trial, BS testified that when defendant knocked on her apartment door, she opened the door because she believed he was with Senior Alliance, a company that provides in-home services to seniors. BS testified that when she opened the door, defendant pushed his way into the apartment, then dragged her into the bedroom where he ordered her to undress, took off his clothes, and raped her. She testified that she felt defendant's penis near her vagina, and she believed that it entered her vagina, and that defendant ejaculated inside of her. BS testified that later she called her daughter, Tony Scatvro, at approximately 10:00 p.m., and that police officers thereafter arrived at her apartment.

Scatvro testified that she spoke to her mother on the telephone several times on June 30, 2019. When talking with BS at approximately 11:00 p.m., BS informed her that she had been sexually assaulted around noon that day. Scatvro testified that she then drove to BS's apartment, where BS appeared confused and "kind of in shock." Over defense counsel's objection, the trial court allowed the admission of Scatvro's testimony that BS stated that she had been sexually assaulted. The trial court found that although BS's statement to Scatvro was hearsay, it was

admissible under the excited-utterance exception to the hearsay rule. The trial court reasoned that given BS's dementia, she may not have been clear on how much time had elapsed between the assault and the conversation with Scatvro, and further that despite the lapse of several hours between the assault and the phone call it was apparent that BS was still very agitated when the conversation with Scatvro occurred.

After speaking with police, Scatvro drove BS to the hospital. BS reported to the sexual assault nurse examiner that she had been sexually assaulted and that defendant penetrated her vulva area with his penis. DNA evidence presented at trial revealed that swabs of BS's labia minora, vaginal wall, labia majora, and anal perianal were insufficient for testing because there was an insufficient amount of male DNA to test for identification purposes. However, DNA testing of defendant's buccal swabs and BS's breast swabs revealed that there was "strong support that [defendant was] a contributor to the DNA from the left and right breast swab."

At trial, the investigating police officer testified that he reviewed surveillance footage of BS's apartment building and located an individual on the surveillance video matching the description that BS provided. Defendant's GPS tether revealed that he had been at BS's apartment building on multiple occasions before BS's assault, and surveillance video and GPS tether data also revealed that defendant was present at BS's apartment building at the approximate time of the sexual assault.

The jury found defendant guilty of third-degree criminal sexual conduct. The trial court sentenced defendant, as a fourth-offense habitual offender, to 35 to 75 years' imprisonment, sentencing defendant above the sentencing guidelines.[1] The trial court found that a minimum sentence within the sentencing guidelines range was "woefully inadequate" to address the "central problem [that] . . . defendant appears to be . . . an irredeemable sexual predator." The trial court noted that defendant had previously been convicted of seven counts of first-degree criminal sexual conduct, multiple counts of second-degree criminal sexual conduct, and other crimes arising out of the ongoing sexual abuse of his stepdaughter. He was paroled in 2018 after completing the minimum sentence, but 13 months later committed the instant offense against an elderly and vulnerable victim. The trial court explained that it was unaware of what sort of treatment could help defendant considering that he had previously spent 14 years in prison as a result of his prior sexual-assault convictions. The trial court observed that the prior record variable score of the guidelines in this case failed to adequately account for defendant's 14 high-severity prior felonies, warranting a substantial upward departure from the guidelines.

---

[1] The sentencing grid for Class B offenses for a level "F" and OV level II offender who was also a fourth-offense habitual offender indicates that the highest minimum sentence under the guidelines would be 260 months' imprisonment. Defendant's minimum sentence of 35 years (420 months), is an upward departure of 160 months from the sentencing guidelines.

## II. DISCUSSION

## A. SUFFICIENCY OF THE EVIDENCE

Defendant contends that there was insufficient evidence to sustain a conviction of third-degree criminal sexual conduct because there was no scientific evidence of penetration, and BS suffered from dementia. We disagree.

We review de novo a challenge to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution to ascertain whether a rational trier of fact could find that the elements of the offense had been proved beyond a reasonable doubt. *People v Miller*, 326 Mich 719, 735; 929 NW2d 821 (2019). In doing so, we draw all reasonable inferences in support of the jury verdict, *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), and do not interfere with jury's role of determining the weight of evidence or the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). The elements of the crime may be established by circumstantial evidence and the reasonable inferences arising from that evidence. *People v Lymon*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 327355); slip op at 3.

To convict a defendant of third-degree criminal sexual conduct under MCL 750.520d(1)(b), the prosecution must establish that the defendant engaged "in sexual penetration with another person and . . . [force] or coercion [was] used to accomplish the sexual penetration." *People v Green*, 313 Mich App 526, 537-538; 884 NW2d 838 (2015). Any penetration, even slight, is sufficient to satisfy the penetration element of third-degree criminal sexual conduct. *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993).

In this case, BS testified that defendant penetrated her vagina with his penis. The nurse examiner who examined BS testified that BS reported that defendant penetrated her vulva area with his penis. Although swabs of BS's vaginal wall, labia minora, labia majora, and anal perianal revealed insufficient male DNA to test for identification purposes, DNA evidence is not required to prove criminal sexual conduct. Rather, the testimony of the victim may itself be sufficient to establish criminal sexual conduct without corroboration. MCL 750.520h; *People v Hoskins*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359103); slip op at 5 n 8.

The jury found BS's testimony and the testimony of the nurse examiner regarding BS's statements credible. In addition, although a victim's testimony is sufficient to support a conviction of third-degree criminal sexual conduct without corroboration, in this case circumstantial evidence presented at trial also supports the conviction. Defendant's DNA evidence was found on BS's left and right breast swabs, and GPS tether data and surveillance video demonstrated that defendant was present at BS's apartment building at the time of the sexual assault. Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found the elements of the offense, including the element of penetration, proved beyond a reasonable doubt. See *Miller*, 326 Mich App at 735.

## B. ADMISSION OF EVIDENCE

Defendant contends that the trial court erred by admitting Scatvro's testimony regarding statements made by BS to her on the phone on the night of the sexual assault, which defendant argues was inadmissible hearsay. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). A trial court abuses its discretion when its decision falls outside the range of principled outcomes, *id*. at 251-252, or when the evidence admitted is inadmissible as a matter of law. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). The decision of the trial court on a close evidentiary question is not an abuse of discretion. *Thorpe*, 504 Mich at 252. Preliminary questions of law regarding the admission of evidence, such as the interpretation of a rule of evidence, are reviewed de novo. *Denson*, 500 Mich at 396.

In this case, Scatvro testified at trial that on the night of June 30, 2019, BS informed her over the phone that she had been sexually assaulted that day around noon. The trial court determined that BS's statements to Scatvro were hearsay, but admitted Scatvro's testimony under the excited-utterance exception, reasoning that as a result of BS's dementia the conversation with Scatvro may have seemed to BS to occur immediately after the assault and that despite the lapse of several hours after the assault, BS apparently was still very agitated when she spoke to Scatvro on the phone.

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay generally is inadmissible unless it falls within an exception to the hearsay rule. MRE 802. MRE 803(2) provides an exception for a hearsay statement that is an excited utterance, which is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The excited-utterance exception allows "testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted).

Although the passage of time is a relevant consideration when determining whether a statement was made while the declarant was still under the stress of the startling event, there is no particular time limit for an excited utterance. *Id*. at 551. Rather, "[i]t is necessary to consider whether there was a plausible explanation for the delay" and "[p]hysical factors, such as shock, unconsciousness, or pain, may prolong the period in which the risk of fabrication is reduced to an acceptable minimum." *Id*. at 551-552. In *Smith*, our Supreme Court held that the trial court properly admitted a hearsay statement as an excited utterance under MRE 803(2) when the statement was made by a 16-year-old to his mother approximately 10 hours after a sexual assault, after several hours of pacing the floor and punching his hand into his fist, then crying and rocking back and forth. The Court reasoned that there was no evidence that the stress from the assault had abated prior to the statement. *Id*. at 548-549, 554.

In this case, the record supports the trial court's finding that BS's statement to Scatvro was an excited utterance. The sexual assault qualifies as a startling event. See *Smith*, 456 Mich at 552. Scatvro testified that she called BS at approximately 11:00 p.m. on the night of the assault and BS related that she had been sexually assaulted. Scatvro drove to BS's apartment immediately following their phone call and discovered that BS was confused and appeared to be in shock. The trial court therefore reasonably concluded that BS was under the excitement caused by the assault at the time she stated to Scatvro that she had been sexually assaulted, and did not abuse its discretion[2] by admitting Scatvro's testimony regarding BS's statements under MRE 803(2).

## C. SENTENCING

Defendant contends that the sentencing court erred by departing upward from the sentencing guidelines range because it failed to justify the upward departure. We disagree.

We review for reasonableness a sentence that departs from the applicable guidelines range. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When a sentence is determined to be unreasonable, resentencing is required. *Id*. We review the reasonableness of a sentence for an abuse of discretion, which occurs when the trial court fails to follow the principle of proportionality or fails to provide adequate reasons for the extent of the departure from the sentencing guidelines. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017).

We review the sentencing court's factual determinations, which must be supported by a preponderance of the evidence, for clear error. *People v Lawhorn*, 320 Mich App 194, 205; 907 NW2d 832 (2017). The trial court clearly errs when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). For purposes of sentencing, "a court may consider all record evidence, including the contents of a [presentence investigation report (PSIR)], plea admissions, and testimony presented at a preliminary examination." *Id*.

A sentencing court that departs from the applicable guidelines ranges no longer is required to "articulate a substantial and compelling reason for that departure." *Lockridge*, 498 Mich at 364-365. However, sentencing courts must "consult the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 392. In addition, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence

---

[2] We also observe that the admission of inadmissible hearsay does not warrant reversal of a defendant's conviction absent a miscarriage of justice. See MCL 769.26; see also *People v Smith*, 336 Mich App 79, 115; 969 NW2d 548 (2021). Here, cumulative evidence was presented supporting the claim that defendant sexually assaulted BS, BS testified that defendant raped her, the responding police officer testified that BS informed him that she had been raped, the trauma nurse testified that BS informed her during a medical examination that she had been sexually assaulted, surveillance video and defendant's GPS tether demonstrated that defendant was present at BS's apartment building at the time of the assault, and defendant's DNA was identified from the medical examination of BS. The admission of BS's statement to her daughter on the telephone, even if erroneous, would not result in a miscarriage of justice.

imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citation omitted).

The proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the " 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636, 461 NW2d 1 (1990) . . . ." *Steanhouse*, 500 Mich at 459-460. The principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460. "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995). "[R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, . . . (2) factors not considered by the guidelines, . . . and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525 (citations omitted). Low potential for rehabilitation has been noted as a factor not considered by the guidelines. *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995).

In this case, the trial court sentenced defendant to 35 to 75 years' imprisonment. At the time defendant committed the sexual assault, he was on parole for seven counts of first-degree criminal sexual conduct, seven counts of second-degree criminal sexual conduct, and multiple other offenses including third-degree home invasion and distributing obscene matter to children. The trial court justified its upward departure from the sentencing guidelines range by referencing these previous offenses. The trial court noted that the guidelines gave inadequate weight to the defendant's prior record in this case, that defendant had not been rehabilitated by efforts during his prior sentences, and that "something needs to be done, to make sure that the likelihood of his ever repeating this crime, is reduced . . . if not obliterated." The trial court noted that the sentencing guidelines in this case failed to consider the volume of defendant's prior convictions, and his pattern of continuing criminal conduct was not adequately reflected by any offense variable.

The trial court further indicated that the upward departure from the minimum sentencing guidelines range reflected the seriousness of defendant's crime because defendant committed a sex crime against a vulnerable, elderly victim. We conclude that the trial court properly justified its upward departure from the sentencing guidelines range by indicating that the imposed sentence was proportionate to the offense because the sentencing guidelines failed to account for defendant's continuing pattern of criminal behavior. We note that the trial court was required to explain why the departure was justified and why the sentence was proportionate, but was not required to explain why it chose a particular upward departure. See *People v Babcock*, 469 Mich 247, 260 n 14; 666 NW2d 231 (2003). Although the 35-year minimum sentence was a significant

upward departure, it was reasonable in light of defendant's pattern of continuing criminal conduct and the severity of defendant's sexual assault of a 68-year-old woman suffering from dementia.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola