*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 18, 2023

Plaintiff-Appellee,

v

No. 354925
Ottawa Circuit Court
LC No. 19-043429-FC

CHRISTOPHER SANCHEZ, SR.,

Defendant-Appellant.

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

A jury convicted defendant, Christopher Sanchez, Sr., of one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration with another person who is at least 13 years of age but less than 16 years of age), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (sexual contact with another person who is at least 13 years of age but less than 16 years of age). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 35 to 75 years' imprisonment for the CSC-III conviction and 10 to 15 years' imprisonment for the CSC-IV conviction. The 35-year minimum sentence for the CSC-III conviction reflected an upward departure from the guidelines range of a little over eight years. Defendant moved post-judgment for a new trial or a *Ginther*[1] hearing. After conducting a *Ginther* hearing, the trial court denied defendant's motion for new trial. Defendant appeals by right his convictions and sentences, alleging ineffective assistance of counsel, evidentiary errors, and sentencing defects. For the reasons stated herein, we affirm defendant's convictions and sentences.

## I. RELEVANT FACTS AND PROCEEDINGS

Defendant's convictions arise from his sexual assault of AV, who was 15 years old at the time of the assault. AV was living with her family at a motel while more permanent housing was being readied for the family. Defendant worked night security at the motel. AV first encountered

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant when he inserted himself into a conversation that she and her mother were having about AV's workouts at the YMCA. Defendant claimed that he had been a mixed martial arts (MMA) fighter in the armed services. Later in the day, defendant went to AV's motel room and offered to show her some of his martial arts moves and videos of people whom he had trained. That evening, AV and defendant practiced MMA kicks behind the motel. At some point, defendant asked AV to kiss him on the cheek, and he told her that she could be a model considering her appearance and the manner in which she presented herself. The next day, defendant invited AV to join him and other trainees for a run on some park trails. Believing that AV would be in a public place with other people, AV's mother gave her permission to go with defendant.

Instead of taking AV to the park, defendant drove her to his house 45 minutes away from the motel. At his home, and while training AV in MMA moves, defendant sexually assaulted her by digitally penetrating her vagina and fondling and licking her right breast. Afterward, defendant drove AV back to the motel. She immediately informed her mother about the sexual assault. AV's mother then called the police. AV was taken to a clinic where a sexual assault nurse examiner (SANE) performed a sexual-assault examination. A swab was taken from the nipple of AV's right breast during the examination, and later analysis of DNA obtained from the swab revealed that it matched defendant's DNA. Defendant was charged, arrested, and convicted by a jury of CSC-III and CSC-IV after a three-day trial. He was sentenced as indicated earlier.

Defendant moved for a new trial or a *Ginther* hearing. And after a four-day *Ginther* hearing, the trial court concluded that although defense counsel's performance on certain evidentiary issues was deficient, there was no reasonable probability that but for counsel's errors the results of the proceeding would have been different. Accordingly, the trial court denied defendant's motion for new trial. Defendant now appeals by right.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court erred by concluding that reversal was unwarranted based on ineffective assistance of counsel. We disagree. Whether counsel was ineffective presents a mixed question of fact and constitutional law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court recited the well-established principles that govern a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

### 1. DEFENDANT'S ALLEGED HEARING LOSS

Defendant argues that he suffers from severe and profound hearing loss and could not hear or understand the witnesses during trial or participate in his defense. Defendant contends that defense counsel provided ineffective assistance by failing to request or obtain hearing aids for defendant and by abandoning defendant during the testimony of two crucial witnesses. Defendant maintains that the trial court clearly erred by finding credible defense counsel's testimony at the *Ginther* hearing that defendant could hear the trial proceedings and did not complain about an inability to hear during trial. Defendant asserts that defense counsel knew that he wanted his prescribed hearing aids during trial but that counsel refused to help him in obtaining the hearing aids. Defendant also claims that the trial court erred by ignoring the testimony of Dr. Jerry Punch, an expert audiologist.

Defendant argues that defense counsel was not credible because his testimony at the *Ginther* hearing conflicted with answers that he gave in response to earlier e-mail questions from defendant's appellate counsel. Defendant provides two examples of defense counsel's purported lack of credibility. First, defendant states that defense counsel initially informed appellate counsel that he did not request hearing aids for defendant because "he did not want to lose 'credibility' before the trial court." At the *Ginther* hearing, defense counsel denied making that statement and admitted that he was aware of defendant's hearing-aid request but did not inform the trial court because he believed that defendant could hear and that the request was a "BS request." The trial court accepted as credible defense counsel's testimony that he did not tell appellate counsel that the hearing-aid issue was not raised so as to avoid losing credibility with the trial court. The trial court noted that defense counsel was "loquacious," that appellate counsel's interpretation of defense counsel's statements did not reflect defense counsel's intent, and that there was never a meeting of the minds between the two attorneys regarding the meaning of their conversation.

Defendant's second example of defense counsel's alleged lack of credibility arises from an e-mail exchange between defense counsel and defendant's appellate counsel in which defense counsel appeared to suggest that it was better that defendant did not hear the trial proceedings so that defense counsel could pay attention to the witnesses' testimony. At the *Ginther* hearing, defense counsel acknowledged his response, explaining that it was something that he wrote in jest, that it was a "very, very, very, very unprofessional" and "absolutely stupid comment," and that he never intended to suggest that he wanted defendant to be unable to participate and assist in his defense. Again, the trial court found defense counsel's explanation of the e-mail exchange to be credible and accurate. The court explained:

In the email, a flippant disregard of defendant's rights is inferred. This apparent disregard of defendant's rights is in stark contrast to trial counsel's representation of defendant during the trial in which it was obvious to the court that trial counsel was heavily invested in the defense and proper representation of defendant. While one cannot condone trial counsel's comment, the court accepts trial counsel's explanation—that this was an unprofessional comment that did not reflect trial counsel's true feelings or reality. Apparently, trial counsel believed that he had a good and open line of communication with appellate counsel and let a desire for jovial banter interfere with his professional presentation.

We have no sound basis to interfere with the trial court's determination that defense counsel was credible. A *Ginther* hearing is an evidentiary hearing at which the trial court serves as the fact-finder, which role requires credibility assessments. See *People v White*, 331 Mich App 144, 154; 951 NW2d 106 (2020) ("To the extent defendant's testimony conflicts with trial counsel's testimony at the *Ginther* hearing, we defer to the trial court's finding that trial counsel was more credible."); MCR 2.613(C). "[G]reat deference must be accorded to the trial court's assessment of the credibility of witnesses." *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003).

In the present case, the trial court's credibility assessment rested not just on defense counsel's testimony at the *Ginther* hearing but also on the court's observations during pretrial and trial proceedings, and defendant has not identified any "exceptional circumstances" that would justify this Court's rejection of the trial court's credibility evaluation. See *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008) (stating that "[a]bsent exceptional circumstances, issues of witness credibility are for the trier of fact").

Defendant next contends that the trial court erred by ignoring Dr. Punch's testimony regarding the extent of defendant's hearing loss and the absence of any credible evidence that defendant was faking the results of his hearing tests. Our review of the trial court's opinion and order following the *Ginther* hearing reveals that the trial court adequately and accurately summarized Dr. Punch's testimony. The question at the *Ginther* hearing did not truly concern the extent of defendant's hearing loss, but whether defense counsel knew that defendant's hearing loss may have prevented him from adequately participating in his defense and whether counsel rendered constitutionally ineffective assistance by purportedly failing to properly act upon that knowledge. Although Dr. Punch's testimony spoke to defendant's hearing loss, it did not speak to whether defendant informed defense counsel that he could not hear the witnesses and evidence against him and whether defense counsel ignored that information.

Lastly, defendant asserts that defense counsel's relocation away from the defense table when AV and her mother testified deprived him of the opportunity to confer with defense counsel during testimony and of his right to confront and adequately cross-examine witnesses. At the *Ginther* hearing, defense counsel explained that he sat in the gallery 10 to 15 feet away from the defense table so that he could have an unobstructed view of AV and her mother while they testified. Counsel stated that he supplied defendant with a pad of paper and a pencil and told defendant that he was going to move. Defense counsel urged defendant to take notes. Counsel further testified that defendant actively participated in his defense by taking notes while the witnesses testified and

giving those notes to counsel before his cross-examination of the witnesses. Defendant also consulted with defense counsel before the conclusion of each cross-examination. The trial court found that counsel's movement into the gallery during the testimony was not unreasonable and that defendant fully participated in his defense.

Defendant has not challenged on appeal the trial court's determination that he participated in his defense. Nor has he challenged defense counsel's testimony at the *Ginther* hearing that he picked up notes from defendant before he started cross-examining a witness and that he consulted with defendant before he concluded his cross-examination of the witness. Given that defendant aided in his defense by taking notes during the witnesses' testimony, provided the notes to defense counsel to aid in cross-examination, and then consulted with counsel before the end of cross-examination, we conclude that defendant has not shown that he was deprived of the right to confront and adequately cross-examine witnesses.[2]

For the foregoing reasons, we hold that defendant has not established that the trial court erred by determining that defense counsel's testimony was credible, by concluding that counsel did not render ineffective assistance for failing to request or obtain hearing aids for defendant, or by finding that counsel's move to the gallery was reasonable and did not deprive defendant of his constitutional rights.

## 2. *MIRANDA* VIOLATIONS

Defendant next contends that the trial court erred by concluding that, despite defense counsel's deficient performance in failing to move to suppress statements made after inadequate *Miranda*[3] warnings, failing to object to the prosecutor's reference to defendant's silence, and failing to ask for a curative instruction, there was not a reasonable probability that the outcome of the trial would have been different. Ultimately, the jury heard testimony that defendant supposedly told a detective that AV had "great tits" and that defendant told the detective that he no longer wished to speak, and the jury heard the prosecutor briefly reference these matters. We agree with the trial court that defendant did not establish the requisite prejudice.[4]

There was no dispute at trial that defendant drove AV to his house and that they were alone at that location for several hours. AV testified that defendant told her that she could be a model, that he asked her about her sexual experiences, and that defendant wanted to know her favorite sexual position. AV also testified that defendant had her kiss him on the cheek when they practiced MMA kicks behind the motel and that he had her kiss him on the lips at the house. A photograph of defendant and AV kissing was admitted into evidence and published to the jury. AV indicated that defendant licked her breast "many, many times," and the SANE testified that she swabbed

---

[2] We cannot help but observe that defendant's ability to take notes regarding the testimony of witnesses entirely undermines his earlier argument that he could not hear the testimony.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[4] We will assume that the trial court correctly determined that counsel's performance was deficient on these matters.

AV's "right breast around the nipple." A DNA expert testified that defendant's DNA was a match to the DNA obtained from the right-breast swab. We find the evidence of defendant's guilt overwhelming. Furthermore, the reference to defendant's silence was brief and minimal, *People v Shafier*, 483 Mich 205, 217-218; 768 NW2d 305 (2009), and there was no indication that defendant unequivocally invoked his right to remain silent, *People v Todd*, 186 Mich App 625, 628-629; 465 NW2d 380 (1990).[5] We conclude that defendant has not shown the existence of a reasonable probability that but for counsel's errors the result of the proceeding would have been different; we have confidence in the outcome. *Carbin*, 463 Mich at 600.

### 3. EVIDENCE

Defendant next argues that defense counsel was ineffective for failing to properly review a surveillance video from defendant's house where the assault allegedly took place and to use it to impeach AV's testimony and buttress defendant's theory of defense.[6]

Defendant first contends that the video evidence could have been used to impeach AV's testimony that she and defendant arrived at the house together. Regardless of whether the video showed or did not show AV's and defendant's arriving at the house together, photographic evidence indisputably established that AV and defendant were together in the four-seasons room of the house, and video footage showed them leaving the home together. Furthermore, AV's mother testified that defendant and AV left the motel together in his car, and a deputy testified that defendant told him that he took AV to the house to conduct MMA training. Defendant notes that the footage does not show AV arriving at the house; however, as already indicated, indisputable photographic evidence established that she was there with defendant.

Defendant next contends that the video footage could have been used to impeach AV's testimony that she and defendant spent five hours at the house and that there was a puppy in the home. Defendant claims that the footage revealed that AV was at the house no more than three hours and that it did not show a puppy. The video, however, was unnecessary to establish conflicting evidence concerning how long AV was at the house. AV testified at one point that she was at the house for about five hours, but then she later testified that she was there from about 3:30

---

[5] With respect to defense counsel's decision not to ask for a curative instruction, we find that defendant has not overcome the strong presumption that counsel's decision constituted sound trial strategy. Defense counsel testified at the *Ginther* hearing that he believed that the discussion during a sidebar that the trial court called shortly after the prosecutor's improper question put a stop to references to defendant's silence. And defense counsel did not want to draw the jury's attention to defendant's silence by asking for a curative instruction. We find this explanation and counsel's conduct to be reasonable.

[6] Defendant also argues that he received ineffective assistance when defense counsel failed to obtain or review the audio recording of the custodial interrogation. Our earlier finding of no prejudice in regard to the *Miranda* violation effectively dispensed of this argument even if the audio revealed that defendant told the detective that AV had "great kicks" and not "great tits."

p.m. until 7:00 p.m. With respect to the lack of video evidence of a puppy, there was testimony that there were no surveillance cameras in the bedroom, and AV's testimony indicated that the puppy was in the bedroom. That the dog was in the bedroom might plausibly explain why there were no images of the dog on the surveillance videotape.

Lastly, defendant asserts that the video footage could have been used to buttress his contention that he was conducting MMA training because it shows him taking boxing gloves and pads out of the car on more than one occasion. There was, however, no dispute that defendant conducted MMA training. AV testified that defendant showed her wrestling moves, and photographs of her and defendant depicted AV wearing boxing gloves.

Given the foregoing, we conclude that defendant has not overcome the strong presumption that counsel's decision not to use the surveillance video constituted sound trial strategy under the circumstances. That a strategy did not work does not necessarily amount to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412-413; 760 NW2d 882 (2008).

In short, we hold that defendant has not established deficient performance and/or prejudice with respect to his claims of ineffective assistance of counsel; therefore, defendant's claims of ineffective assistance of counsel fail.

## B. IDENTIFICATION

Defendant next asserts that the trial court erred by not striking the testimony of a witness who provided evidence under MRE 404(b). Defendant argues that the testimony was inadmissible because the witness could not identify defendant in the courtroom. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to admit evidence. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). In regard to evidentiary issues, this Court reviews de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Burns*, 494 Mich at 110 (quotation marks and citation omitted).

The witness at issue testified that she met a "Christopher Sanchez" about $2^1/_2$ years before the trial when he came to her sister's house to train the witness in MMA techniques. She claimed that during the training Sanchez pinned her to the floor and rubbed and touched her inappropriately on her chest, legs, and arms. The witness stated that she could feel his penis moving up and down in her "private area." The witness was unable to identify defendant in the courtroom, but she identified him in a photograph that had been admitted into evidence and that had been taken closer in time relative to the sexual assault.

Defendant moved to strike the witness's testimony on the basis of her inability to identify defendant in the courtroom. The trial court denied the motion. The court reasoned that the witness's contact with the person whom she knew as Christopher Sanchez had been minimal and more than two years before the trial. The trial court further reasoned that the witness's statement that the Christopher Sanchez she knew held himself out to be an MMA trainer constituted a

"secondary" means of identification. Finally, the court noted that defendant's hairstyle looked very different at trial in comparison to the 2019 photograph that the witness had used to identify defendant. Under the circumstances presented, and in light of the trial court's sound reasoning, we conclude that the trial court did not abuse its discretion or otherwise err by declining to exclude the witness's MRE 404(b) testimony. Reversal is unwarranted.[7]

## C. ALLEGED SENTENCING SCORING ERRORS

Next, defendant argues that the trial court erred in scoring offense variables (OVs) 3, 10, and 13. We conclude that it is only necessary for us to address and resolve defendant's challenge regarding OV 13. In *People v Horton*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360726); slip op at 2, this Court stated:

> Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. Clear error is established when the appellate court is left with a firm and definite conviction that an error occurred. This Court reviews de novo whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute. In scoring OVs, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination. The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable. When a preserved scoring error alters the appropriate guidelines range, resentencing is generally required. This Court reviews de novo issues involving the interpretation of the sentencing variables. [Quotation marks, citations, brackets, and ellipses omitted.]

Defendant argues that the trial court erred by assessing 25 points for OV 13. OV 13 is properly assessed at 25 points if the sentencing offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c). When determining the appropriate number of points to score under OV 13, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). "A sentencing court is free to consider charges that were earlier dismissed if there is a preponderance of the evidence supporting that the offense took place." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013) (citation omitted).

On appeal, defendant's sole objection to the trial court's assessment of 25 points for OV 13 is that the court took into consideration the 2018 sexual assault that was the subject of defendant's argument under MRE 404(b). Defendant objects to the inclusion of this incident in scoring OV 13 because the witness could not identify defendant in the courtroom and because defendant was not charged with any crime in relation to the assault. As discussed earlier, the witness identified defendant through a photograph, and, under the circumstances, the trial court did not err by

---

[7] Defendant contends that the cumulative effect of multiple errors in this case deprived him of due process. Having found harmless error solely in the context of the *Miranda*-related arguments, defendant's due-process argument fails.

allowing this form of identification and by denying defendant's motion to strike the witness's testimony. We find that the evidence in respect to scoring OV 13 was adequate to find that defendant committed a crime against a person in relation to the 2018 sexual assault. Moreover, the fact that there was no charge or conviction was irrelevant in scoring OV 13. See MCL 777.43(2)(a); *Nix*, 301 Mich App at 205. Accordingly, the trial court did not err by assessing 25 points for OV 13.

The sentencing information report (SIR) that set forth the scoring of the OVs and prior record variables (PRVs) indicated that defendant's total OV score was 75 points, placing him at OV level VI, which is the top OV level in the pertinent Class B grid. See MCL 777.63. A total score of 75-or-more points justifies placement of a defendant at OV level VI. *Id.* Taking into consideration defendant's total PRV score of 75 points along with his total OV score of 75 points and the fact that he was a fourth-offense habitual offender, defendant's minimum sentence guidelines range was 117 to 320 months' imprisonment. *Id.*; MCL 777.21(3)(c).[8] The SIR reflected that OV 11 was assessed at zero points. But at the sentencing hearing, the trial court found that OV 11 should have been scored at 25 points; therefore, defendant's total OV score was actually 100 points, which defendant acknowledges in his brief on appeal. Defendant challenges the 10-point assessment for OV 3 and the 15-point assessment for OV 10, which defendant essentially concedes should have been scored at 5 and 10 points, respectively. But even if OVs 3 and 10 should have been scored at zero points, this would result in a 25-point deduction in defendant's total OV score of 100 points, dropping him down to 75 total points, meaning that he would still be at OV level VI, and there would be no change in the guidelines range. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2004) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required."). Accordingly, we need not address and resolve defendant's challenges to the scoring of OVs 3 and 10.

## D. DEPARTURE SENTENCE

Defendant's final claim of error is that the trial court imposed an upward-departure sentence that was unreasonable and disproportionate. We disagree.

This Court reviews for reasonableness "[a] sentence that departs from the applicable guidelines range." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), our Supreme Court provided elaboration on the "reasonableness" standard, stating:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

---

[8] We note that defendant was subject to a mandatory minimum sentence of at least 25 years' imprisonment under MCL 769.12(1)(a).

Factual findings related to a departure must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Lawhorn*, 320 Mich App 194, 208-209; 907 NW2d 832 (2017). For purposes of sentencing, "a court may consider all record evidence, including the contents of a PSIR,[9] plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

The key test is not whether a sentence departs from or adheres to the guidelines range but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Sentencing judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Milbourn*, 435 Mich at 661. A sentence within the guidelines might be disproportionality lenient. *Id.* "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995).[10] In *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019), this Court indicated that the factors that may be considered by a trial court under the proportionality test include, but are not limited to, the following:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Quotation marks and citation omitted.]

"[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). "When fashioning a proportionate minimum sentence that exceeds the guidelines recommendation, a trial court must justify why it chose the particular degree of departure." *People v Smith*, 482 Mich 292, 318; 754 NW2d 284 (2008). We note that our Supreme Court has now held "that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019).

The trial court sentenced defendant to a minimum sentence of 420 month's imprisonment (35 years)—an upward departure of 100 months ($8^1/_3$ years). The trial court relied on court documents, police reports, and motions held earlier in the proceedings to articulate a number of

---

[9] PSIR stands for presentence investigation report.

[10] We emphasize, however, that although the guidelines are no longer mandatory, they remain a highly relevant consideration for purposes of exercising sentencing discretion, and trial courts must consult and take into account the guidelines when imposing sentence. *Lockridge*, 498 Mich at 391.

reasons in support of its upward-departure sentence. The court based its decision primarily on its determination that a minimum sentence within the guidelines range was not proportionate to the offender. The trial court opined that the sentencing guidelines did not adequately account for defendant's years-long pattern of sexually assaulting young women. The trial court also did not believe that the guidelines adequately accounted for the fact that defendant had been twice convicted of violating the Sex Offenders Registration Act, MCL 28.721 *et seq*. Nor did the trial court believe that the OVs sufficiently accounted for defendant's method of making his young victims vulnerable by taking advantage of their "desire for recognition and fame and then progressing to using them for his personal sex toy." The trial court characterized defendant as the "figurative wolf in sheep's clothing," a "patient, scheming rapist." The trial court noted that defendant expressed no remorse, see *Lampe*, 327 Mich App at 126, and found there to be no mitigating factors: Defendant had not succumbed to youthful indiscretion, was not provoked, and was not acting out of character because of the influence of alcohol or drugs. The court characterized defendant as an "antisocial criminal" with little potential for rehabilitation. Defendant did not take responsibility for his actions, nor had he done anything to address his proclivities. As evidence that defendant was "not to be trusted and had no moral compass," the trial court recounted that after defendant impregnated a 14-year-old girl in 2008, he tried to "pin the blame and the DNA results on [his] then 14 or 15-year-old son."

The trial court articulated several reasons why the guidelines failed to provide a proportionate sentence and why an increase in defendant's sentence was proportionate to the offender. Defendant has not argued on appeal that any of these reasons were improper. In *People v Barnes*, 332 Mich App 494, 506-507; 957 NW2d 62 (2020), this Court affirmed a seven-year upward departure on the basis of the trial court's explanation that the guidelines did not fully account for the seriousness of the offense, that the defendant lacked remorse, and that there was no demonstrative potential for rehabilitation. Similarly, we conclude that the trial court's reasons for departure were proper and that the court's upward departure of $8\frac{1}{3}$ years was proportionate to the seriousness of the circumstances surrounding the offense and the offender, especially in regard to the offender.

We affirm.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney